Appellant, Ford Motor Company, brings this appeal after suffering an adverse jury verdict which awarded damages to appellee, *Page 738 
Boyd Rodgers, in the sum of $15,000. This judgment was rendered as compensation for injuries which Rodgers sustained when the hydraulic system of a Ford combine failed and the corn header attached to the combine and under which Rodgers was working fell on him. A corn header is a piece of equipment which weighs approximately 4,000 pounds and attaches to the front of a combine. It serves to mechanically harvest ears of corn and place them in a bin. A corn header has a revolving end that cuts like a lawn mower and brings what is cut into the machine and then separates the ears of corn from the foliage.
Rodgers' amended complaint alleged that Ford Motor Company's negligence was based on one of the following grounds: (1) Failing to use due care in the manufacture of the combine; or (2) Failing to properly design said combine; or (3) Failing to warn the plaintiff of the dangerous condition created when the corn header was raised.
In December, 1972, Rodgers purchased a 1968 Ford 630 self-propelled combine, one of 300 produced by a West German company and marketed by Ford Motor Company during June of 1968. Rodgers took delivery of the Ford 630 combine during "the last of May or first of June" 1973. The sales invoice listed the combine as a new machine although at the time of the purchase Rodgers was aware of the fact that the combine was a used one. One of the officials of the Ford dealer, Carl Grant Tractor Company, a co-defendant in the action below, testified that he told Rodgers at the time of purchase that the hydraulic system of the combine would raise and lower whatever corn header was attached to the combine and hold it in a raised position. In July, 1973, Rodgers purchased a used corn header from Grant.
On the morning of the accident, July 31, 1973, Rodgers testified that he started the engine on the combine, activated the hydraulic system controlling the position of the corn header and raised it to a sufficient height so that he could sit underneath the header and grease it. Rodgers then crawled underneath the header and had begun greasing it when he found it necessary to move out from underneath the header. While crawling out on his hands and knees, the header suddenly fell and struck Rodgers, causing a compression fracture of one of his vertebrae.
It was discovered that the hose of the hydraulic system had ruptured at the location where the hose went into a coupling, causing a loss of pressure and the header to fall. There was testimony from a witness who qualified as an expert that the coupling to the hose was insufficient in length, contending that if the sleeve of the coupling had been longer it would have had more strength and been able to withstand greater hydraulic pressure. There was evidence the rupture occurred at the joinder of the hose with the coupling.
Another of the plaintiff's claims was that the hydraulic system should have been equipped with a safety assembly or sleeve or device to prevent the header from falling if the hydraulic system malfunctioned while the header was in a raised position. If not, then Ford was under an obligation to warn of possible dangers from the hydraulic system.
Ford contends, first, that it was entitled to a directed verdict because Rodgers failed to prove at the time of the injury he was applying the equipment to a use for which it was manufactured and in a usual and customary manner. Ford relies on a number of Alabama cases, including Miles v. ChryslerCorporation, 238 Ala. 359, 191 So. 245 (1939), and NortonCompany v. Harrelson, 278 Ala. 85, 176 So.2d 18 (1965). With respect to the doctrine of "manufacturers' liability" the defendant contends the following language from Norton is applicable to the case:
 "This doctrine is applicable in a limited number of situations. The defendant must be either the manufacturer or seller of the injury-producing article. There is no privity of contract between the defendant and the injured plaintiff. At the time complained of the article must have been applied to the use for which it was manufactured and sold and that use must *Page 739 be in the usual and customary manner. Where these circumstances exist the manufacturer or seller will be liable for an injury proximately resulting from the use of the article but only where the article is inherently or imminently dangerous to human life or health, or becomes so when put to its intended use in the proper manner. This liability arises from either the negligent manufacture of the article or negligence in selling it."
[Emphasis added]
278 Ala. 85, 88, 176 So.2d 18, 20-21.
Ford contends that the usual and customary manner of greasing the header was from above and if it were to be greased from below then it would be usual and customary to use a blocking device, such as a jack or a timber, to secure the header.
There was evidence that the machinery was being used in an open, rough field to harvest corn which was certainly the usual and customary use of the machinery. There was evidence that it was necessary that the corn header be in a raised position regardless of whether the greasing was being done from above or below; that greasing had to take place every 4 to 6 hours in the field while operating; that if the hydraulic system failed there would be a danger of being injured regardless of whether the greasing occurred while the person was above the machine or below the machine and that there were grease fittings beneath the header in which it was necessary to insert a grease gun. There was also evidence that in the operation of the corn header it was necessary to raise and lower the header with the combine's hydraulic system for many purposes, including the greasing function.
Under the evidence in this case questions for determination by the trier of facts were correctly presented as to whether the machinery was being applied to a use for which it was manufactured and sold and whether that use was in a usual or customary manner.
Ford contends that the trial court erred in not granting its motion for directed verdict regarding Rodgers' claim that Ford was negligent in failing to warn Rodgers of the dangerous condition created when the corn header was in a raised position. Ford asserts that it was under no duty to warn because the danger of going under the raised header was open and obvious.
A manufacturer is not under a duty to warn the user of every danger that may exist during use of his product. The objective of placing a duty to warn on the manufacturer or supplier is to inform a user of the danger for which he is not aware, therefore, there is no duty to warn when the danger is obvious. 72 C.J.S. Supp. Products Liability §§ 25, 26. See also Frumer and Friedman, Products Liability, Volume I, pp. 143-187 (1975).
This court recognized the duty of a manufacturer to warn inAltorfer Brothers Co. v. Green, 236 Ala. 427, 183 So. 415
(1938), when it stated that if a manufacturer places a machine on the market which is imminently dangerous when put to its intended purpose, then the manufacturer is chargeable with the duty "not to expose to such danger an ignorant public who will likely use it. And if defendant [manufacturer] knows that it is imminently dangerous when used in the customary manner, it is chargeable with anticipating such injury from its use without exercising reasonable diligence to make such danger known to the public likely to use it." 236 Ala. 427, 429, 183 So. 415,417. The court in Altorfer Brothers, after outlining the evidence that was most favorable to the injured plaintiff, held that the determination of whether the plaintiff had knowledge of the danger under the facts of that case was for the jury.
In the case of Kingsberry Homes Corporation v. Ralston,285 Ala. 600, 235 So.2d 371 (1970), Ralston, an employee of AGS Railroad, was injured while using a stirrup or step of a boxcar to climb upon a loading platform of Kingsberry Homes Corp. when his fellow crewman backed the train into the boxcar and smashed him between the side of the car and the loading platform. The court allowed recovery against Kingsberry Homes Corp. on the theory that the *Page 740 
loading platform was negligently maintained too close to the spur track, contrary to contractual prohibitions. The court stated as follows:
 "As to Kingsberry's contention that it was due the affirmative charge on the theory that a landowner is not liable for injury to an invitee from `open and obvious' dangers or dangers known to the invitee and that plaintiff's testimony conclusively showed that he knew of the danger, we conclude that this contention is untenable * * *.
 "As we have already mentioned, it is settled that a scintilla of evidence for the plaintiff is sufficient to warrant submission of the issues to the jury. Admitting arguendo the applicability of the `open and obvious danger' rule to the facts at bar, we think that there was at least a scintilla of evidence to show that plaintiff did not know of the danger."
285 Ala. 600, 606, 235 So.2d 371, 376.
While Kingsberry Homes involves premise liability issues, nevertheless, the holding that it is for a jury to determine whether the danger was known to the plaintiff is applicable to the case under review in that certain basic issues are the same.
The evidence in this case was in conflict as to whether it was dangerous to go underneath the corn header when it was in a raised position. The defendant elicited testimony from an experienced farm equipment dealer, a professional farm mechanic, and Ford's expert in farm equipment, that it would be dangerous.
There was evidence that Rodgers was unfamiliar with this Ford combine and header and that this was the first time that he had attempted to lubricate the header. He had seen employees of Carl Grant Tractor Company working under his combine and header in the field without blocking the header up. Lawrence Boeschen, a farmer who had considerable experience with combines, testified that he customarily went under a header while performing lubricating or greasing tasks after raising it and that he did not block it up for such purposes.
The plaintiff contends that under the facts in this case the determination of whether the danger was open and obvious should be based upon the knowledge of the person injured and not on whether it would be an open and obvious danger to an experienced farm equipment dealer, a professional farm mechanic or an expert in farm equipment.
In considering whether a danger is open and obvious, this court holds that under the facts of this case the jury was properly allowed to take into consideration whether the injured person had any special experience involving the condition from which he was injured, whether it would be commonly known that such a condition was dangerous, whether the danger should have been obvious to the injured person, and finally, whether the user had knowledge of the danger and appreciated it.
In determining the propriety of granting a motion for a directed verdict, the court must indulge every influence in favor of the nonmoving parties. ARCP, Rule 50; Alabama PowerCompany v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975).
The record in this case indicates that there was sufficient conflicting evidence to allow reasonable men to differ on whether the danger here was open and obvious and thus it was proper for the court to allow this issue to go to the jury.
This case was not tried under the new Alabama Extended Manufacturer's Liability Doctrine (Casrell v. Altec Industries,Inc., 295 Ala. ___, 335 So.2d 128 (1976) and Atkins v. AmericanMotors Corp., 295 Ala. ___, 335 So.2d 134 (1976)), since this doctrine was not adopted by this court at the time of the trial below. However, it should be noted that the duty to warn on the part of the manufacturer being obviated by a danger which is open and obvious will no longer be an issue in cases brought under the Alabama Extended Manufacturer's Liability Doctrine. Instead, it is important to note that one of the affirmative defenses *Page 741 
available to manufacturers and suppliers under this doctrine is a new concept under Alabama law, known as assumption of risk. In regards to establishing a defense of assumption of risk this court in Atkins stated: "The defendant may establish that he sold a product which was unavoidably unsafe and the danger was
either apparent to the consumer or the seller adequately warned
the consumer of the danger." Ala., 335 So.2d 134, 143. (Emphasis supplied.)
Ford also asks this court to review the trial court's overruling its objection to the testimony of a witness called by Rodgers to testify as an expert on the design of the Ford combine. Ford attacks the credentials of Rodgers' expert on the grounds that, although he had performed general repair work on various combines over a span of 27 years, he had never worked on a Ford 630 Combine and had never made a hydraulic hose and fitting similar to the one involved in this case.
It is an established principle of Alabama jurisprudence that the determination of whether a witness is qualified to testify as an expert is primarily within the discretion of the trial judge and that the trial judge's ruling will not be disturbed on appeal unless it is patently abusive. After reviewing the qualifications of Rodgers' expert witness and reviewing the testimony elicited, this court concludes that the trial judge was well within the bounds of his discretionary prerogative in allowing this witness to testify as an expert. The discrepancies in the witness' qualifications and testimony, alleged by Ford to be fatal, were clearly brought to the attention of the jury by counsel for Ford and it was for the jury to decide what weight should be given the testimony of the witness. Baldwin v. McClendon, 292 Ala. 43, 288 So.2d 761
(1974); Maslankowski v. Beam, 288 Ala. 254, 259 So.2d 804
(1972); Baggett v. Allen, 273 Ala. 164, 137 So.2d 37 (1962);Alabama Consolidated Coal Iron Co. v. Heald, 168 Ala. 626,53 So. 162 (1910).
Ford also contends that the trial court committed reversible error in failing to give its requested charges numbered 4, 16, 19 and 25. In determining the merit of these contentions the court is guided by the following provision in Rule 51 of the Alabama Rules of Civil Procedure: "The refusal of a requested written instruction, although a correct statement of the law, shall not be cause for reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court's oral charge or in charges given at the request of the parties. * * *"
Ford's requested charge number 18 which was given is substantially the same as charge number 4.
The court's oral charge adequately apprised the jury in regard to the elements contained in Ford's requested charges numbered 16 and 19 and, therefore, no reversible error was committed by the court's refusing to give these charges.
Ford's requested charge number 25 confuses the issue of usual and customary use of the combine with the defense of contributory negligence. Because a person's conduct might not be usual and customary does not necessarily equate a lack of due care. In this instance the issue concerning contributory negligence was whether a reasonable prudent person under similar circumstances would work beneath the header without first providing for blocks or jacks to support said header.
For the reasons stated above this case is due to be affirmed.
AFFIRMED.
JONES, SHORES and BEATTY, JJ., concur.
MADDOX, J., concurs in result. *Page 742