CERTIFIED QUESTION FROM UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION
Under Rule 18, ARAP, the United States District Court for the Southern District of Alabama, Southern Division, has requested this Court to answer a question of Alabama law which that court deems determinative of an action before it and on which there is no clear, controlling precedent in the decisions of this Court.
The federal district court has certified the following question (CER-14):
 Whether as a matter of law the Alabama Extended Manufacturer's Liability Doctrine applies where an injury or death results from the use of a defective product, an aircraft, where it is claimed that the product was placed in the stream of commerce by demonstration but no sale of the product has been made.
In Casrell v. Altec Industries, Inc., 335 So.2d 128 (Ala. 1976) and in Atkins v. American Motors Corp., 335 So.2d 134
(Ala. 1976), this jurisdiction adopted the Extended Manufacturer's Liability Doctrine which imputes negligence as a matter of law to a manufacturer, or supplier, or seller who markets a product not reasonably safe when applied to its intended use in the usual and customary manner.
With reliance on Casrell and Atkins, supra, it has been argued that this doctrine should apply only in those cases in which there has been a sale in fact. This Court was careful to point out in Atkins, however, *Page 967 
that we deliberately declined at that time to foreclose similar applications of the Extended Manufacturer's Liability Doctrine.Atkins at 144. Admittedly, Casrell and Atkins involved situations in which sales had taken place. They did not purport to encompass every application of the doctrine. Indeed, we carefully noted in Atkins that "the gravamen of the action is that the defendant manufactured or designed or sold a defective product which, because of its unreasonably unsafe condition, injured the plaintiff or damaged his property when such product, substantially unaltered, was put to its intended use."Atkins at 139 (emphasis added). The disjunctive "or" indicated, at least inferentially, that liability might ensue whether or not an actual sale had taken place.
Nor do we consider that the Restatement of Torts 2d § 402A, on which the Extended Manufacturer's Liability Doctrine is based, limits the principle to sales situations. The Restatement does speak in terms of "one who sells" and the "seller" as being liable. Perhaps a sale is the most common situation in which application of § 402A arises, but the policy behind § 402A supports the extension of liability to situations other than sales. Comment c. to § 402A is instructive:
 On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products. (emphasis added)
Marketing is defined as:
 [A]n aggregate of functions involved in transferring title and in moving goods from producer to consumer including among others buying, selling, storing, transporting, standardizing, financing, risk bearing, and supplying market information. Webster's Third New International Dictionary (G. C. Merriam Co., 1971). (emphasis added)
The fact that a technical sale has not taken place should not relieve a manufacturer who has placed defective merchandise on the market. Quite the contrary, the manufacturer's liability arises because he has placed the product on the market. Afortiori, having placed the product on the market, if the manufacturer still retains some measure of control, he should be liable under the doctrine.
The tendency of strict liability cases in other jurisdictions is to extend liability in non-sale situations: Delaney v.Towmotor Corp., 339 F.2d 4 (2d Cir. 1964) (demonstration of fork lift truck); Cintrone v. Hertz Truck Leasing and RentalService, 45 N.J. 434, 212 A.2d 769 (1965) (lease of a truck);McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787 (Tex. 1967) (free sample given to prospective customer); Perfection Paintand Color Co. v. Konduris, 147 Ind. App. 106, 258 N.E.2d 681
(Ind. 1970) (free lacquer reducer furnished following sale).
In Delaney v. Towmotor Corp., supra, the plaintiff sustained injuries from defective equipment which had been lent to his employer for a demonstration. Applying New York law, the court found that liability of the manufacturer arose from "`[h]aving invited and solicited the use'" of the machine. 339 F.2d 6.
Perfection Paint and Color Co. v. Konduris, supra, involved an action against a supplier who had sold paint which did not properly adhere to the purchaser's floor. To remove the paint the supplier furnished a paint remover and lacquer reducer free of charge. The highly volatile lacquer reducer was ignited by a hot water heater and the *Page 968 
resulting fire fatally injured the purchaser's employee. In holding the supplier liable, the court adopted the approach ofDelaney, that when a manufacturer or supplier had placed a defective article in the "stream of commerce," whether an actual sale had taken place or not, the manufacturer or supplier owed a special duty and responsibility to protect prospective customers.
Not only does decisional authority emphasize the "stream of commerce" in fixing liability, but it is also the more reasonable view. When a product is placed in the "stream of commerce," the marketing cycle as it were, whether by demonstration, lease, free sample or sale, the doctrine should attach. In each of these situations the profit motive of the manufacturer is apparent whether or not a "sale" in the strict sense takes place. Moreover, the manufacturer who enters the market is in a better position to know and correct defects in his product and as between him and his prospective consumers should bear the risk of injury to those prospective consumers when any such defects enter the market uncorrected. Justification for this doctrine is founded on "broader moral notions of consumer protection and on economic and social grounds, placing the burden to compensate for loss incurred by defective products on the one best able to prevent the distribution of those products." Atkins at 139.
CERTIFIED QUESTION ANSWERED IN THE AFFIRMATIVE.
BLOODWORTH, MADDOX, FAULKNER, JONES, SHORES and EMBRY, JJ., concur.