**AMERICAN STATES INSURANCE COMPANY, et al., Plaintiffs,**

v.

**LANIER BUSINESS PRODUCTS, et al., Defendants.**

Civ. A. No. 88–T–809–N.

United States District Court,
M.D. Alabama, N.D.

Feb. 13, 1989.

James E. Williams, Melton & Espy, Montgomery, Ala., for American States Ins. Co. and St. Paul Fire & Marine Ins. Co.

Joseph S. Bird, Michael Bell, Brittin T. Coleman, Bradley, Arant, Rose & White, Birmingham, Ala., for defendant Lanier Business Products.

John T. Alley, Jr., Webb, Crumpton, McGregor, Sasser, Davis & Alley, Montgomery, Ala., for defendant Toshiba America, Inc.

William H. Brittain, II, Ball, Ball, Duke, Matthews & Novak, Montgomery, Ala., for defendants Elgin Corp. and Combustion Eng. & Basic Inc.

### ORDER

MYRON H. THOMPSON, District Judge.

This cause, in which the plaintiffs, American States Insurance Company and St. Paul Fire and Marine Insurance Company have sued for recovery under, among other theories, the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), is now before the court on a motion for summary judgment filed by one of the defendants, Lanier Business Products. For the reasons that follow, the court concludes that Lanier's motion should be granted in part and denied in part.

## I. BACKGROUND

On September 10, 1986, a fire broke out in a building owned by Hill, Guthrie & Trawick Properties in Montgomery, Alabama. An investigation of the fire suggested that a power supply box installed by Lanier Business Products, a tenant in the building, may have caused the fire. The unit had been sold to Lanier as part of a shipment of such units manufactured by Toshiba of America, Inc.

Plaintiff American Trust Insurance Company was the insurance carrier for the owners of the building, and plaintiff St. Paul Fire and Marine Insurance Company insured one of the building's other tenants. Required under their respective policies to pay claims to their insureds for damages resulting from the fire, the two insurance companies initiated this action seeking recovery for their claims payments. In this litigation, they have sued Lanier Business Products, Toshiba of America, Inc., Elgin Corporation, and Combustion Engineering, seeking relief under a variety of legal theories, including negligence, breach of warranty, breach of contract, and the AEMLD.

During the time period in question, Toshiba, as a general course of business, supplied these telephone power supply units to Lanier Business Products, which in turn resold the units to the general public. The units were marketed as Lanier Business Products' merchandise under the Harris/Lanier label. As part of its business, Lanier sold, distributed, installed, and maintained these power supply units.

Although Lanier intended that the shipment of units would eventually be marketed to the general public, the particular power supply unit involved in this litigation was used by Lanier Business Products for internal purposes in its Montgomery, Alabama office. Lanier employees installed the unit in the Hill, Guthrie & Trawick building for the express purpose of using it in conjunction with the telephone system Lanier was using in its offices.[1]

It was this unit, the installation of the unit, or the failure to maintain the unit properly that, according to the plaintiffs, gave rise to the fire that damaged and partially destroyed the offices in the Hill, Guthrie & Trawick building.

By its motion for summary judgment, Lanier alleges that there are no disputes of material fact and that, as a matter of law, it is entitled to judgment on the plaintiffs' claims of negligence and under the AEMLD.[2]

## II. THE ALABAMA EXTENDED MANUFACTURER'S LIABILITY DOCTRINE

■ The Alabama Supreme Court first announced the adoption of the AEMLD in *Casrell v. Altec Industries, Inc.*, 335 So.2d 128 (Ala.1976), and *Atkins v. American Motors Corp.*, 335 So.2d 134 (Ala.1976). Under this doctrine, a manufacturer, supplier, or seller who markets a product not reasonably safe when applied to its intended use in the usual and customary manner, is negligent as a matter of law. *Entrekin v. Atlantic Richfield Co.*, 519 So.2d 447, 449 (Ala.1987).

To state a cause of action under the AEMLD, a plaintiff must show:

(1) He suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff or the ultimate user or consumer, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) Showing these elements, the plaintiff has proved a prima facie case although

---

1. Plaintiffs have not contended that any other tenant in the Hill, Guthrie & Trawick building benefited from Lanier's installation of the telephone power supply unit.

2. Although plaintiffs raised other grounds for relief, both the defendants and the plaintiffs only discuss these two causes of action in their respective briefs. Accordingly, the court treats Lanier's motion for summary judgment as applying only to these two causes.

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from, or entered into any contractual relationship with, the seller.

*Casrell,* 335 So.2d at 132–33; *Atkins,* 335 So.2d at 141.

While this doctrine in many ways resembles the strict liability doctrine found in § 402A of the *Restatement (Second) of Torts* (1965), there are some significant differences. Primary among them is the fact that the AEMLD retains the common law notion of negligence or fault. *Casrell v. Altec Industries, Inc.,* 335 So.2d at 132; *Atkins v. American Motors Corp.,* 335 So. 2d at 139.[3] The practical consequence of this distinction is the retention of various affirmative defenses not available under the strict liability theory propounded in § 402A. Thus, in defending a suit brought pursuant to the AEMLD, a manufacturer, supplier, or seller may rely upon several affirmative defenses, including contributory negligence, assumption of the risk, and under certain circumstances, lack of causal relation.[4] *Casrell,* 335 So.2d at 134; *Atkins,* 335 So.2d at 143. Moreover, the defendant in an AEMLD suit can present evidence to rebut any element of the plaintiffs' prima facie case. *Id.*

Lanier challenges the plaintiffs' proposed application of the AEMLD to it in this litigation.[5] Lanier argues it never introduced the particular telephone power supply unit that allegedly caused the fire into the public marketplace. Lanier avers that the AEMLD was never intended to be applied to products used for internal consumption only. Relying upon the Alabama Supreme Court's decision in *The First National Bank of Mobile v. Cessna Aircraft Co.,* 365 So.2d 966 (Ala.1978), Lanier contends that, since the power supply unit that allegedly caused the fire was never entered into the "stream of commerce," the AEMLD is inapplicable.

The plaintiffs respond, in essence, by arguing that the fact that the model that allegedly caused the fire was used internally rather than placed on the market was the result of mere chance. They note that the model was part of a larger shipment of power supply units that Lanier had received from Toshiba, its manufacturer. Asserting that Lanier introduced the remainder of the shipment into the commercial marketplace, the plaintiffs contend that this act was sufficient for applying the AEMLD and that Lanier should not be able to escape liability simply because, in retrospect, it was fortuitous in its choice of which model it chose for its internal purposes.

---

**3.** As one commentator observed:

Section 402A of the *Restatement* totally abandons the requirement of showing fault, or negligence, in product liability suits. In contrast, the rule adopted by the Alabama Supreme Court, though a form of strict liability, retains "the 'fault' concept based on a standard of conduct causally related in fact to the defective condition of the unreasonably dangerous or unsafe product." When, however, the defendant "markets a product not unreasonably safe when applied to its intended use in the usual and customary manner," fault need not be proved—it is supplied "as a matter of law." The culpability of the manufacturer or supplier arises from his conduct in placing on the market a product that causes personal injury or property damage when it is applied to intended use.

Note, *Torts—Product Liability—A Manufacturer, Supplier, or Seller Who Markets a Product Not Reasonably Safe When Applied to Its Intended Use in the Usual and Customary Manner Is Negligent as a Matter of Law,* 28 Ala.L.Rev. 747, 756–57 (1977) (footnotes omitted).

**4.** However, the "lack of causal relation" defense is not available to a defendant such as Lanier who distributes a product under its own trade name. *Casrell,* 335 So.2d at 134 (citing *Sears, Roebuck & Co. v. Morris,* 273 Ala. 218, 136 So.2d 883 (1961)).

**5.** To the extent that Lanier intimates that it cannot be treated as a manufacturer for the purposes of negligence or imposition of the AEMLD, the law of Alabama is otherwise. *See Sears, Roebuck & Company v. Morris,* 273 Ala. 218, 136 So.2d 883, 885 (1961) (adopting § 400 of the Restatement of the Law of Torts which provides that "One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer").

While at first blush the plaintiffs' assertions have some appeal, the court is convinced that such a result would be inconsistent with both the case law surrounding the AEMLD and the policy reasons underlying the doctrine. The problem with the plaintiffs' argument is that it attempts to blur the distinction between products used for internal usage and products placed on the market for more general consumption. This difference is essential if the manufacturer's extended liability doctrine is to apply to Lanier.[6] *Compare First National Bank of Mobile v. Cessna Aircraft Co.,* 365 So.2d 966 (Ala.1978) (AEMLD applies where products have been placed in the "stream of commerce") *with CNG Producing Co. v. Columbia Gulf Transmission,* 709 F.2d 959, 963 (5th Cir.1983) (products liability doctrine is inapposite where manufacturer has used product internally and not injected it into the stream of commerce).

In *First National Bank of Mobile v. Cessna Aircraft Co.,* the Alabama Supreme Court addressed what actions by a manufacturer, supplier, or seller were necessary to bring its products within the scope of the AEMLD. The question in *First National Bank of Mobile* concerned whether a sale in fact was a necessary prerequisite to bringing a manufacturer's actions under the AEMLD's purview. In holding that an actual sale was not a necessary predicate, the Alabama Supreme Court construed the AEMLD to apply to any manufacturer or supplier who places a defective article in the "stream of commerce." *Id.,* at 967–68. This holding was

premised on the notion that a manufacturer or supplier who, through any of a variety of marketing techniques, exposes his product to the general public owes a special duty and responsibility to protect those prospective consumers. *Id.,* at 968. Consequently, any entity that places its product in the market cycle, whether by demonstration, lease, free sample, or sale, has an obligation to protect prospective customers from the harms that may be caused by the product should it prove to be defective. *Id.*

From the facts of this case, it appears quite clear that Lanier never introduced the particular product alleged to have been the cause of the fire into the "stream of commerce" as that term is used in *First National Bank of Mobile.* While it is true that Lanier is in the business of placing telephone power supply units on the market for general consumption, the fact remains that the particular unit in question was not so placed. The profit motive upon which the AEMLD is premised, *see First National Bank of Mobile,* 365 So.2d at 968, simply is not present in a case in which the product remains solely within the manufacturer's walls.[7] As the Fifth Circuit observed in *CNG Producing Co. v. Columbia Gulf Transmission,* "If the defendant has not offered the product for sale but kept it for his own purposes, then the justifications for strict liability do not apply." 709 F.2d at 963.

From a policy perspective, this outcome makes sense. Both strict liability and the AEMLD developed as legal concepts as means of equalizing the market disparity between consumers and producers.[8] As

**6.** This order deals only with the application of the AEMLD to Lanier. The court expresses no view as to whether the plaintiffs or even Lanier itself might have an AEMLD claim against Toshiba of America or any other entity that was involved in the manufacture, distribution, or sale of the particular unit alleged to have caused the fire.

**7.** In their memorandum of law, the plaintiffs assert that Lanier used this particular telephone power supply unit as a demonstration model to impress prospective customers. Unlike the factual allegations that the plaintiffs make in other parts of their memorandum, this assertion is made noticable by its lack of citation to any

reference to the plaintiffs' submission of factual material. Bald assertions of fact without documentary support are insufficient to defeat a motion for summary judgment.

**8.** While Alabama adopted only a modified version of the strict liability doctrine, the policies underlying the emergence of the strict liability doctrine are instructive. Moreover, insomuch as the policies underlying even a strict liability doctrine do not support a finding of liability against Lanier as a manufacturer, the court feels confident that under the Alabama doctrine, which treats manufacturers, supplier, and sellers more leniently than does the strict liability doctrine, a similar result is mandated.

the Alabama Supreme Court explained in *First National Bank of Mobile,* "The manufacturer who enters the market is in a better position to know and correct defects in his product as between him and his prospective consumers when any such defects enter the market uncorrected." 365 So.2d at 968.[9] The emergence of a manufacturer's liability doctrine, in effect, required manufacturers who desired to introduce products into the marketplace to factor into the cost of production an element of liability insurance. *See* § 402A, Comment c, *Restatement (Second) of the Law of Torts (quoted in Atkins v. American Motors Corp.,* 335 So.2d at 145); *Greenman v. Yuba Powers Products Inc.,* 59 Cal.2d 57, 27 Cal.Rptr. 697, 701, 377 P.2d 897, 901 (1962) ("[t]he purpose of such liability is to insure that the costs of injuries are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves"). In other words, this doctrine requires a manufacturer, as part of the cost of doing business with the public and in recognition of the duty owed to the public consumer, to sit as the insurer of its products. In recognition of the manufacturer's special status relative to the consuming public, courts have found that manufacturers owe special obligations to the general public, including, under certain circumstances, a duty to give directions or warnings to prospective customers. *See Ford Motor Co. v. Rodgers,* 337 So.2d 736, 740–41 (Ala.1976).

On the other hand, when a product is not introduced into the general marketplace for consumption but is instead dedicated for internal consumption, these policy concerns are no longer relevant. Issues relating to "spreading the cost of accidents" and "disparity in bargaining power" do not pertain to a manufacturer's internal usage of potentially commercial products. The short explanation for this result is that when a product is committed solely to internal use, the manufacturer of the product is also the consumer of the product. To extend the concept of strict liability in this scenario would require the nonsensical assumption that a manufacturer as consumer needs to be protected from itself, as manufacturer.

Admittedly, the facts of this case suggest that Lanier assumes several roles with respect to the telephone power supply units. In a general sense, Lanier is the seller of the power supply units that it purchases from Toshiba of America and other distributors. Moreover, because it puts the Harris/Lanier label on the units, Lanier may also legally be treated as the manufacturer of the units. Thus, for any unit that Lanier places in the "stream of commerce" as either seller or manufacturer, potential AEMLD liability exists.

However, given the facts of this case, Lanier is also, in a very real sense, a consumer of the power supply units. It purchased the unit at issue in this litigation and employed it solely within the confines of the Montgomery, Alabama office. It did not introduce the product into the "stream of commerce." While Lanier may be considered to be the manufacturer of the unit as a matter of law by virtue of having affixed its label on the unit, it was also, from a practical perspective, undeniably the consumer of the product. Accordingly, to the extent that Lanier employed a product internally with no indication of introducing that product into the marketplace, it can only be treated as the court would treat any other consumer. Hence, manufacturer's liability is inapplicable. *See CNG Producing Co. v. Columbia Gulf Transmission,* 709 F.2d at 963.

## III.

■ The court need not discuss at length Lanier's challenge to the plaintiffs' claims of negligence. Plaintiffs' evidence surrounding the manner in which Lanier in-

---

**9.** *Accord LaRossa v. Scientific Design Co.,* 402 F.2d 937, 942 (3rd Cir.1968) ("[t]he disparity in position and bargaining power which forces the consumer to depend entirely on the manufacturer and the difficulty of requiring the injured party in consumer products cases to trace back along the channel of trade to the source of production in the search for the origin of the defect in order to prove negligence have been among the reasons for the emergence of the doctrine of strict liability in tort").

stalled and maintained the telephone power supply unit raises sufficient issues of material fact so as to preclude judgment as a matter of law. Fed.R.Civ.P. 56(c). *See Cowan v. J.C. Penney, Inc.*, 790 F.2d 1529, 1532 (11th Cir.1986).

### IV.

In conclusion, it is ORDERED that defendant Lanier Business Products' motion for summary judgment filed on August 22, 1988, is granted with respect to the plaintiffs' claim arising under the Alabama Extended Manufacturers' Liability Doctrine and said claim is dismissed as against defendant Lanier Business Products.

It is further ORDERED that, with respect to all other grounds raised by defendant Lanier Business Products in its August 22, 1988, motion for summary judgment, said motion is denied.