**Annie Mae PITTS, etc., Plaintiff,**

v.

**DOW CHEMICAL COMPANY, et al., Defendants.**

**Civ. A. No. 92–T–841–N.**

United States District Court, M.D. Alabama, Northern Division.

July 29, 1994.

Larry Lewis Raby; and Roger S. Morrow and Wesley Romine, Morrow, Romine & Pearson, P.C., Montgomery, AL, for plaintiff.

Dennis R. Bailey, Richard B. Garrett, Nathan Wayne Simms, Jr., Rushton, Stakely, Johnston & Garrett; and Tabor R. Novak, Jr., and Gerald C. Swann, Jr., Ball, Ball, Matthews & Novak, P.A., Montgomery, AL, for defendants.

### *MEMORANDUM OPINION*

MYRON H. THOMPSON, Chief Judge.

In this lawsuit, plaintiff Annie Mae Pitts—representing the estate of her deceased son, Willie Pitts—charges that the defendants are liable in tort for her son's death. Her son died while applying "Dursban TC," a pesticide manufactured, distributed, and sold by defendants. Defendants are Dow Chemical Company, Eli Lilly & Company, Van Waters & Rogers, Inc., DowElanco, Terra International, Inc., and Riverside Chemical Company, Inc. This lawsuit is now before the court on the following motions: plaintiff's motion

to amend her complaint; defendants' motions for summary judgment or, in the alternative, for judgment on the pleadings; and defendants' motion to strike certain exhibits. For the reasons given below, plaintiff's motion to amend will be granted, defendants' motions for summary judgment will be granted, and defendants' motion to strike will be denied as moot.

### I. BACKGROUND

On July 6, 1990, according to plaintiff, her son was applying Dursban TC when he lost consciousness and died as a result of prolonged exposure to the product. Her son was then employed with Gunn Exterminators in Montgomery, Alabama as a termite treater and pest control specialist.

Plaintiff brought suit against defendants in state court in June 1992. Defendants removed the lawsuit to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§ 1332, 1441. Each of the three counts in plaintiff's original complaint rests almost exclusively upon the inadequacy of the warning label on Dursban TC. Count I alleges that the warnings or instructions on Dursban TC were defective and inadequate, rendering the product unreasonably and inherently dangerous. Count II alleges that defendants negligently designed, formulated, developed, prepared, produced or failed to exercise proper quality control over the warnings and instructions which accompanied Dursban TC and that this negligence failed to apprise users of the dangers associated with that product. Count III alleges that defendants negligently failed adequately to warn users of Dursban TC of the dangers associated with the prolonged use of that product and failed adequately to disseminate information regarding the appropriate measures to avoid such dangers.[1] Defendants contend that plaintiff's claims are preempted by federal law, specifically, by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C.A. §§ 136–136y, which provides for the registration of pesticides and the approval of adequate warning labels by

---

1. In count IV of her complaint, plaintiff also claimed a breach of the implied warranty of merchantability. By order of August 19, 1992, and in reliance upon *Shell v. Union Oil Company*, 489 So.2d 569 (Ala.1986), this court dismissed her warranty claim.

the United States Environmental Protection Agency (the "EPA").[2]

On November 5, 1992, the proceedings in this case were stayed pending a reconsideration by the Eleventh Circuit Court of Appeals of its holding in *Papas v. Upjohn Co. (Papas I)*, 926 F.2d 1019 (1991). In *Papas I*, the Eleventh Circuit held that FIFRA *impliedly* preempts state common law tort claims based on inadequate labeling. The Supreme Court, however, vacated *Papas I* and remanded it for further consideration in light of the Court's decision in *Cipollone v. Liggett Group, Inc.*, — U.S. —, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). *Papas v. Zoecon Corp.*, — U.S. —, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992). At that time, plaintiff and defendants agreed that the Eleventh Circuit's decision on remand was potentially dispositive of the issues then before this court.

On remand, the Eleventh Circuit held in *Papas v. Upjohn Co. (Papas II)*, 985 F.2d 516 (1993), that FIFRA *expressly* preempts state common law tort claims based on inadequate labeling. Defendants responded to this decision with motions to resume proceedings in this lawsuit. Defendants also filed motions for summary judgment or, in the alternative, for judgment on the pleadings, asserting that *Papas II* fully disposed of plaintiff's claims. Plaintiff then filed a motion to strike defendants' motions for summary judgment, asserting that, because a petition for writ of certiorari had been filed in *Papas II*, the Eleventh Circuit's holding had yet to become final. Before the court ruled on these motions, however, the Supreme Court denied certiorari in *Papas II*. — U.S. —, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993). On December 6, 1993, this court found that *Papas II* was final and controlling law in the Eleventh Circuit, granted defendants' motions to reopen proceedings, and denied plaintiff's motion to strike defendants' motions for summary judgment.

Plaintiff also filed a motion to amend her complaint. In an apparent attempt to state claims not based on inadequate labeling, plaintiff seeks three amendments to her complaint. First, she seeks to amend count III—negligent failure to warn users of dangers—to add a claim that Dursban TC is an unreasonably and inherently dangerous product for the purposes for which it was made available. Second, she seeks to add count V to state a claim under the Alabama Extended Manufacturer's Liability Doctrine (the "AEMLD") that Dursban TC is an unreasonably and inherently dangerous product for the purpose for which it was designed and that her son was an intended user of that product. Third, she seeks to add count VI to state a claim that Dursban TC was rendered unreasonably and inherently dangerous by defendants' negligent design and production of that product.

Defendants oppose these amendments, but argue that—even if the amendments are allowed by the court—all claims in the amended complaint remain preempted by FIFRA. Defendants also seek to strike certain evidentiary materials submitted by plaintiff to show that Dursban TC is an unreasonably and inherently dangerous product. The court will now consider the pending motions in turn.

## II. PLAINTIFF'S MOTION TO AMEND

■ As described above, plaintiff has moved to amend her complaint to state claims that do not refer specifically to the inadequacy of Dursban TC's warning label.[3] Defendants assert that the court should deny the motion to amend on the ground that the amendments would be futile because all claims in the amended complaint, as in the original complaint, are preempted by FIFRA.

After the period for amendment of a complaint has passed, "a party may amend the party's pleading only by leave of court or by

---

**2.** As discussed more fully below, FIFRA provides that a "State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter." 7 U.S.C.A. § 136v(b).

**3.** Plaintiff contends that her amended complaint simply seeks to clarify, and not expand, her original complaint. Because the court will grant the motion to amend, it need not determine whether plaintiff's original complaint stated a claim that did not refer to Dursban TC's warning label.

written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *Stevens v. Gay*, 864 F.2d 113, 116 (11th Cir.1989). It seems to have been the understanding of the parties at the time this case was continued that the Eleventh Circuit's decision on remand in *Papas* could be followed by amendments to the complaint. Plaintiff represented to the court in her motion for a continuance that the "ruling by the Eleventh Circuit may very well require amendments to the pleadings concerning additional theories and at a minimum will direct the process by which discovery will proceed." [4] Defendants did not oppose plaintiff's motion. On the basis of this understanding, the court concludes that justice requires that the motion to amend be granted. Therefore, in ruling on the defendants' motions for summary judgment or, in the alternative, for judgment on the pleadings, the court will consider those motions with respect to all claims in the amended complaint. It is to those dispositive motions that the court now turns its attention.

### III. DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Because matters outside the pleadings have been presented to and not excluded by the court, defendants' motions for summary judgment or, in the alternative, for judgment on the pleadings, will be treated as motions for summary judgment and disposed of as provided in Rule 56 of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 12(c); *Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir.1982).

#### A. *Summary Judgment Standard*

Rule 56(c) provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106

S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing how the responsibilities on the movant and the nonmovant vary depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or nonmovant bears the burden of proof at trial).

#### B. *Discussion*

##### 1. The FIFRA Scheme of Pesticide Regulation and Labeling

FIFRA is a comprehensive regulatory statute governing the use, sale, and labeling of all pesticides sold in the United States. 7 U.S.C.A. § 136a. All pesticides sold or distributed in the United States must be registered with the EPA. 7 U.S.C.A. § 136a(a). A pesticide manufacturer seeking registration must submit proposed labeling and instructions for a pesticide, 7 U.S.C.A. § 136a(c)(1)(C), along with certain toxicological and other data generated from studies prescribed by the EPA. 40 C.F.R. §§ 158.-240, 158.340, 158.390.

Upon receiving this information, the EPA cannot register a pesticide unless it finds that all of the following criteria have been met:

"(A) its composition is such as to warrant the proposed claims for it;

(B) its labeling and other material require [sic] to be submitted comply with the requirements of this subchapter;

(C) it will perform its intended function without unreasonable adverse effects on the environment; and

(D) when used in accordance with widespread and commonly recognized practice it will not generally cause unreasonable adverse effects on the environment."

7 U.S.C.A. § 136a(c)(5). "Unreasonable adverse effects on the environment" is defined as "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." 7 U.S.C.A. § 136(bb).

4. Plaintiff's motion for continuance (Oct. 20,   1992), at 4.

When Congress amended FIFRA in 1972, it recognized that pesticides—many of which can be poisonous to humans as well as the target pests—have "both beneficial and deleterious" effects, and it designated the Administrator of the EPA as the party to conduct the necessary balancing analysis. *Papas I,* 926 F.2d at 1022 (quoting S.Rep. No. 92–838, 92nd Cong., 2d Sess., *reprinted in* 1972 U.S.C.C.A.N. 3993, 3996).[5] "The question [the Administrator] must decide," according to Congress, "is 'Is it better for man and the environment to register this pesticide, or is it better that this pesticide be banned?' " *Id.* at 1023 (quoting S.Rep. No. 92–838, at 4032). Congress explained that:

> "He must consider hazards to farmworkers, hazards to birds and animals and children yet unborn. He must consider the need for food and clothing and forest products, forest and grassland cover to keep the rain when it falls, prevent floods, provide clear water. He must consider aesthetic values, the beauty and inspiration of nature, the comfort and health of man. All these factors he must consider, giving each its due."

*Id.*

Prior to registering a pesticide, the EPA must determine if the pesticide's "labeling and other material" meet FIFRA's detailed requirements. 7 U.S.C.A. § 136a(c)(5)(B). Labeling is defined to include "all labels and other written, printed, or graphic matter— (A) accompanying the pesticide ... at any time; or (B) to which reference is made on the label or literature accompanying the pesticide...." 7 U.S.C.A. § 136(p). Regulations promulgated pursuant to FIFRA specifically control the form and content of labels, including precautionary statements about risks to humans and directions for safe use. 40 C.F.R. §§ 156.10(h)(2)(i)(A), 156.-10(i). Final labeling is approved by the EPA only if it is "adequate to protect the public from fraud and from personal injury and to prevent unreasonable adverse effects on the environment." 40 C.F.R. § 156.10(i)(1)(i).

## 2. The Scope of Preemption: Papas II

In FIFRA, Congress spoke directly to the authority of states to regulate pesticides:

> "Authority of States
>
> (a) In General
>
> A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.
>
> (b) Uniformity
>
> Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter."

7 U.S.C.A. § 136v. The directive of Congress that States "shall not impose or continue in effect any requirements for labeling or packaging" beyond the requirements imposed by FIFRA forms the basis for the Eleventh Circuit's finding of preemption in *Papas II.*

In *Papas II,* the plaintiffs asserted claims based on negligence, strict liability, and breach of an implied warranty of merchantability. "Each of these claims was, in whole or in part, a claim of inadequate labeling for alleged dangers arising from exposure to pesticides." 985 F.2d at 517. The *Papas II* court concluded that:

> "FIFRA expressly preempts state common law actions against manufacturers of EPA-registered pesticides to the extent that such actions are predicated on claims of inadequate labeling or packaging. To the extent that appellants' negligence, strict liability, and breach of implied warranty claims require a showing that [the manufacturer's] labeling and packaging caused the alleged injury, those claims are preempted by FIFRA."

*Id.* at 520.[6] The court, however, left open a window for certain state law actions: "Claims

---

**5.** In *Papas II,* the Eleventh Circuit adopted *Papas I* 's discussion of FIFRA's legislative history and regulatory scheme. 985 F.2d at 517 n. 1.

**6.** In so doing, the court specifically concluded that FIFRA's preemption of state "requirements" includes a state's common law tort actions for damages. *Papas II,* 985 F.2d at 518.

that do not challenge [the manufacturer's] labeling and packaging are not preempted." *Id.*

■ Wide agreement exists among the federal courts that FIFRA expressly preempts state causes of action that require a showing of inadequate labeling. *See Worm v. American Cyanamid Co.*, 5 F.3d 744, 747–48 (4th Cir.1993); *King v. E.I. Dupont de Nemours and Co.*, 996 F.2d 1346, 1347 (1st Cir.), *cert. dismissed*, ⎯ U.S. ⎯, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993); *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 371 (7th Cir.1993); *Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.*, 981 F.2d 1177, 1179 (10th Cir.), *cert. denied*, ⎯ U.S. ⎯, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993); *Bingham v. Terminix Int'l Co., L.P.*, 850 F.Supp. 516, 519–20 (S.D.Miss.1994); *Trinity Mountain Seed Co. v. MSD Agvet*, 844 F.Supp. 597, 601 (D.Idaho 1994).[7]

### 3. Counts I, II, and III

■ Having set forth that FIFRA preempts claims based on inadequate labeling, the court must determine which of plaintiff's claims are so preempted. The court has no difficulty concluding that each of the three "original" counts in plaintiff's complaint, as amended, falls squarely within the class of claims preempted by FIFRA.

Count I alleges that "the warnings and/or instructions of Dursban TC, termiticide concentrate, were defective and inadequate in regard to an inherently dangerous product, or alternatively, rendered said product unreasonably or inherently dangerous." Count II alleges that certain of the defendants "negligently designed, formulated, developed, prepared, produced or failed to exercise proper quality control over the warnings and instructions which accompanied the product Dursban TC." And Count III, even as amended, alleges that the defendants, "although aware of the potential for injury and death due to the chronic or prolonged use of the product Dursban TC, termiticide concen-

trate or pesticides, did negligently fail to adequately disseminate information to prospective users of said product or pesticides, including Plaintiff's decedent, of said dangers." As in *Papas*, "[e]ach of these claims [is], in whole or in part, a claim of inadequate labeling for alleged dangers arising from exposure to the pesticides," *Papas II*, 985 F.2d at 517, and each is therefore preempted.

■ Although Count III challenges defendants' failure "to adequately disseminate *information* to prospective users," and thus does not appear directly to challenge the adequacy of warning labels or packaging, the *Papas II* court has already addressed such a claim and found it to be preempted. On appeal, the Papases argued that FIFRA "does not preempt failure to warn claims based on point-of-sale signs, consumer notices, or other informational materials that are 'unrelated' to labeling and packaging." *Id.* at 519. The court concluded that any claims based on a failure to provide information "necessarily challenge the adequacy of the warnings provided on the products labeling or packaging." *Id.* The court further concluded: "If a pesticide manufacturer places EPA-approved warnings on the label and packaging of its product, its duty to warn is satisfied, and the adequate warning issue ends." *Id.* Each of counts I, II, and III, therefore, is "predicated on claims of inadequate labeling or packaging," *id.* at 520, and is preempted by FIFRA. Summary judgment on each of these counts should be granted in favor of defendants.

### 4. Counts V and VI

In counts V and VI of the amended complaint, plaintiff seeks to state claims that do not rest upon the inadequacy of Dursban TC's warning labels. In count V, she alleges that Dursban TC is an unreasonably and inherently dangerous product for the purpose for which it was intended, that the product reached her son substantially un-

---

7. The only circuit court decision holding that FIFRA does not preempt state common law tort claims, *Ferebee v. Chevron Chemical Co.*, 736 F.2d 1529 (D.C.Cir.), *cert. denied*, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984), has been impliedly overruled by the Supreme Court's deci-

sion in *Cipollone* and is no longer viewed as persuasive. *See King*, 996 F.2d at 1351; *Stamps v. Collagen Corp.*, 984 F.2d 1416, 1425 & n. 9 (5th Cir.), *cert. denied*, ⎯ U.S. ⎯, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993).

changed from the time the defendants placed it into the stream of commerce, and that her son was an intended user of that product. Plaintiff proceeds in count V under the AEMLD. In count VI, plaintiff does not refer to the AEMLD, but alleges that defendants' negligence resulted in an unreasonably and inherently dangerous product being made available.

■ Although plaintiff does not refer to the AEMLD in count VI—attempting to proceed under a theory of negligence with respect to an unreasonably dangerous product—both count V and count VI state claims that must be analyzed under the AEMLD. The court, therefore, will briefly review that doctrine. As previously explained by this court in *American States Ins. Co. v. Lanier Business Products,* 707 F.Supp. 494, 495–96 (M.D.Ala.1989), the Alabama Supreme Court first announced the adoption of the AEMLD in *Casrell v. Altec Industries, Inc.,* 335 So.2d 128 (Ala.1976), and *Atkins v. American Motors Corp.,* 335 So.2d 134 (Ala.1976). Under this doctrine, "a manufacturer, supplier, or seller who markets a product not reasonably safe when applied to its intended use in the usual and customary manner, is negligent as a matter of law." *American States,* 707 F.Supp. at 495; *see also Entrekin v. Atlantic Richfield Co.,* 519 So.2d 447, 449 (Ala.1987).

To establish liability under the AEMLD, a plaintiff must prove:

"(1) he suffered injury of damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) Showing these elements, the plaintiff has proved a prima facie case although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from, or entered into any contractual relation with, the seller."

*Casrell,* 335 So.2d at 132–33; *Atkins,* 335 So.2d at 141.

■ While the AEMLD has much in common with the doctrine of strict liability in tort found in § 402A of the *Restatement (Second) of Torts* (1965), it is more accurately described as a hybrid of strict liability and traditional negligence concepts. *Casrell,* 335 So.2d at 132; *Atkins,* 335 So.2d at 139. On the one hand, the AEMLD is akin to strict liability because selling an unreasonably dangerous product—that is, a defective product—is deemed to be negligent as a matter of law: "[l]iability ... attaches solely because the defendant has exposed expected users of a product not reasonably safe to unreasonable risks." *Atkins,* 335 So.2d at 141.[8] On the other hand, in contrast to the purely "no-fault" version of strict liability found in the *Restatement,* the AEMLD retains various affirmative defenses, including contributory negligence, assumption of the risk, and, under certain circumstances, the lack of a causal relation. *Casrell,* 335 So.2d at 134; *Atkins,* 335 So.2d at 143.

■ The hybrid nature of the AEMLD has two consequences in this case. First, count VI of plaintiff's complaint—negligence

---

**8.** One commentator has observed:

"Section 402A of the *Restatement* totally abandons the requirement of showing fault, or negligence in product liability suits. In contrast, the rule adopted by the Alabama Supreme Court, though a form of strict liability, retains 'the "fault" concept based on a standard of conduct causally related in fact to the defective condition of the unreasonably dangerous or unsafe product.' When, however, the defendant 'markets a product not unreasonably safe when applied to its intended use in the usual and customary manner,' fault need

not be proved—it is supplied 'as a matter of law.' The culpability of the manufacturer or supplier arises from his conduct in placing on the market a product that causes personal injury or property damage when it is applied to its intended use."

Note, *Torts—Products Liability—A Manufacturer, Supplier, or Seller Who Markets a Product Not Reasonably Safe When Applied to Its Intended Use in the Usual and Customary Manner Is Negligent as a Matter of Law,* 28 Ala.L.Rev. 747, 756–57 (1977) (footnotes omitted).

with respect to an unreasonably unsafe product—does not state a claim distinct from the AEMLD. Rather, the AEMLD is the sole cause of action for negligence when the factual basis for the charge of negligence is that the defendant set a defective product into the stream of commerce. Thus, there is no practical difference between counts V and VI— even though one refers to the AEMLD and the other does not—because both seek to impose liability on the ground that the death of plaintiff's son was caused by an unreasonably dangerous product. "[T]he gravamen of the [AEMLD] action is that the defendant manufactured or designed or sold a defective product which, because of its unreasonably unsafe condition, injured the plaintiff or damaged his property when such product, substantially unaltered, was put to its intended use." *Atkins*, 335 So.2d at 134. *See Veal v. Teleflex, Inc.*, 586 So.2d 188, 190–91 (Ala. 1991) (claim that product was unreasonably dangerous for its intended use was a claim under the AEMLD and did not state separate negligence claim).

■ The second consequence is that, under the AEMLD, defendants have available certain common law defenses, including the affirmative defense of assumption of the risk. The Alabama Supreme Court explained the assumption-of-the-risk defense in this context as follows: "The defendant may establish that he sold a product which was *unavoidably unsafe* and the danger was either apparent to the consumer or the seller adequately warned the consumer of the danger." *Atkins*, 335 So.2d at 143 (emphasis in original). In *Casrell*, the Court also stated that the danger posed by an unreasonably dangerous product "may be obviated by an adequate warning." *Casrell*, 335 So.2d at 133. *See also Ford Motor Co. v. Rodgers*, 337 So.2d 736, 741 (Ala.1976). In *Deere & Co. v. Grose*, 586 So.2d 196 (Ala.1991), the Alabama Supreme Court, in affirming a trial court's denial of a directed verdict to a defendant who raised the affirmative defense of adequate warning in an AEMLD action, held

that the question of whether the warning was adequate was one for the jury. *Id.* at 199. Under the AEMLD, therefore, a defendant who convinces the factfinder that a warning label was adequate may not be held liable.

■ Thus, although plaintiff does not use the words "inadequate warning" in counts V and VI of her complaint, it is apparent that she could not succeed on her AEMLD claims without the jury having to decide whether the warnings accompanying Dursban TC were adequate. That is, because defendants have raised the affirmative defense of assumption of the risk, the jury will be called upon to weigh the risks posed by Dursban TC against the warnings provided to determine if those warnings are sufficient to apprise users of health risks.[9] The Eleventh Circuit wrote in *Papas II* that the Papases' claims were preempted because they would

"require the finder of fact to determine whether, under state law, [the defendant] adequately labelled and packaged its product. *This inquiry is precisely what section 136v forbids.*"

*Papas II*, 985 F.2d at 518 (emphasis added). This court, therefore, must and does hold that counts V and VI of plaintiff's complaint—which would necessarily require an inquiry into the adequacy of Dursban TC's warning label—are also preempted by FIFRA. Under the FIFRA scheme, only the EPA Administrator, after balancing the benefits of a product against the risks to humankind, may determine if a warning is adequate: "it is for the EPA Administrator, not a jury, to determine whether labelling and packaging information is incomplete or inaccurate, and if so what label changes, if any, should be made." *Id.* at 519.

■ Plaintiff argues that only *claims* based on inadequacy of warning labels, not *affirmative defenses*, are preempted by FIFRA and that the "EPA determination or approval of a product or label is merely evidence to be considered regarding whether

9. It is arguable that, in *any* AEMLD action where the product claimed to be unreasonably and inherently dangerous contained a warning label of some kind, the jury would be called upon to decide the adequacy of the warning label—even where a defendant did not specifically raise the defense of assumption of the risk. Because these defendants do raise the defense of assumption of the risk, however, the court need not reach this issue.

a defendant's behavior was tortious."[10] For this court to draw a distinction between claims and affirmative defenses, however, would be contrary to the directives of *Papas II* that state common law actions based "in whole or in part" on inadequate labeling are to be preempted and that a jury is to make no inquiry into the adequacy of labeling. Moreover, the only alternative—to allow a plaintiff to proceed under the AEMLD without allowing a defendant to show that warning labels were adequate—would be to transform the AEMLD into a doctrine of "pure" strict liability, an action only the courts or legislature of Alabama may take. Because Alabama law now retains the concept of fault under the AEMLD, and specifically authorizes the affirmative defense of adequate warning, this court cannot allow these defendants to be held liable for producing and selling a product under a label that has been approved by the EPA and which they cannot alter without EPA approval.[11]

The court, therefore, concludes that counts V and VI of plaintiff's complaint, along with counts I, II, and III, challenge the adequacy of the warning labels under which the defendants produced and sold Dursban TC. Each of plaintiff's claims is thus preempted by FIFRA and judgment will be entered in favor of defendants.

## IV. DEFENDANTS' MOTION TO STRIKE EXHIBITS

Plaintiff has submitted certain supplemental evidentiary materials to the court—including the deposition testimonies of an expert toxicologist and of the former employer of plaintiff's son, various toxicological publications, and certain written correspondence—in support of her claim that Dursban TC is an inherently dangerous product. Defendants have raised several evidentiary objections to these materials and have moved to strike them from the court's consideration on summary judgment. Because the court has concluded that all of plaintiff's claims are preempted by FIFRA as a matter of law, it did not consider whether Dursban TC is in fact an inherently dangerous product.[12] That is, even viewing the supplemental evidence in the light most favorable to plaintiff's case, the court remains compelled to grant summary judgment in defendants' favor. Defendants have in no way been prejudiced by plaintiff's submission of these supplemental materials; defendants' motion to strike, therefore, will be denied as moot.

An appropriate judgment will be entered.

## JUDGMENT

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of this court:

(1) That the motion to amend complaint, filed by plaintiff Annie Mae Pitts on November 24, 1993, is granted;

(2) That the motions for summary judgment or, in the alternative, for judgment on the pleadings, filed by defendants Dow Chemical Company, Eli Lilly & Company, Van Waters & Rogers, Inc., and DowElanco on August 20, 1993, and filed by defendants Terra International, Inc. and Riverside Chemical Company, Inc. on September 7, 1993, are granted;

(3) That the motion to strike exhibits to plaintiff's supplemental response, filed by defendants on December 22, 1993, is denied as moot; and

(4) That judgment is entered in favor of defendants Dow Chemical Company, Eli Lilly & Company, Van Waters & Rogers, Inc., DowElanco, Terra International, Inc., and Riverside Chemical Company, Inc., and

---

10. Plaintiff's supplemental response (Dec. 14, 1993), at 5.

11. As plaintiff points out, not all common law causes of action or state regulation with respect to pesticides are preempted by FIFRA. *See, e.g., Wisconsin Pub. Intervenor v. Mortier,* 501 U.S. 597, 613, 111 S.Ct. 2476, 2486, 115 L.Ed.2d 532 (1991) (states may regulate sale and use of pesti-

cides); *Prather v. Ciba–Geigy Corp.,* 852 F.Supp. 530, 532–33 (1994) (negligent testing, formulation, or manufacture of pesticides not preempted). Counts V and VI, however, do challenge labeling and thus fall within the class of claims preempted by FIFRA.

12. Indeed, the court did not consider these evidentiary materials for any purpose whatsoever.

against plaintiff Pitts, with plaintiff Pitts taking nothing by her complaint.