682 So.2d 438 (1996)
James RICHARDSON and Lisa Richardson
v.
PSB ARMOR, INC., et al.
1941631.
Supreme Court of Alabama.
September 13, 1996.
*439 L. Andrew Hollis, Jr. of Pittman, Hooks, Marsh, Dutton & Hollis, P.C., Birmingham, and Rufus R. Smith, Dothan, for plaintiffs James Richardson and Lisa Richardson.
S. Allen Baker, Jr. and Teresa G. Minor of Balch & Bingham, Birmingham, for defendants Southern Company Services, Inc. and Alabama Power Company.
Alan C. Livingston of Lee & McInish, Dothan, for defendant PSB Armor, Inc. (filed brief taking" no position on the certified questions").
PER CURIAM.
The United States District Court for the Middle District of Alabama has certified to this Court several questions relating to the Alabama's Workers' Compensation Act, and, particularly, when it is proper under that Act for an employer's "service company," or a "group thereof," to be deemed to be an "employer."
Underlying the certified questions are the following facts:
In May 1993, James Richardson, an employee of the Farley Nuclear Plant in Dothan, received an on-the-job injury. Workers' compensation benefits were awarded to Richardson from his employer, Southern Nuclear Operating Company ("Southern Nuclear").
Southern Nuclear, Richardson's statutory "employer," operates the Farley Nuclear Plant for the plant's owner, Alabama Power Company ("APCo"). Southern Nuclear handles the plant's day-to-day operations, under a contract between it and APCo. In turn, Southern Nuclear receives support services from Southern Company Services, Inc. ("SCSI"), under a January 1991 contract between it and SCSI.[1] All three companies APCo, which owns the plant; Southern Nuclear, which manages the plant's day-to-day operations for APCo (and which employs Richardson); and SCSI, which provides support services to Southern Nuclear in the operation of the plantare wholly owned subsidiaries of The Southern Company.
In January 1994, Richardson sued APCo, SCSI, and other entities in the United States District Court for the Middle District of Alabama. He sought damages from APCo and SCSI for his work-related injuries. APCo and SCSI both denied liability and each has moved for a summary judgment.
It is undisputed that if APCo or SCSI is properly afforded "employer" status under the Alabama Workers' Compensation Act, then it is entitled to immunity from Richardson's claim. In this regard, APCo contends that it is immune because the definition of "employer" under the Alabama Workers' Compensation Act includes the phrase "a group thereof" and it claims to come within that phrase. SCSI argues that it is entitled to the status of an "employer," because, it says, as a "service company" for a self-insured employer, Southern Nuclear, it also falls within the statutory definition of "employer."
Regarding APCo and SCSI's summary judgment motions, the district court has certified the following questions to this Court:
"(a) Whether a service company that does not provide assistance related to workers' compensation benefits qualifies as a `service *440 company for a self-insurer' and, thus, is an `employer' for purposes of the Alabama Workers' Compensation Laws.
"(b) Whether the services provided by [SCSI] to Southern Nuclear Operation Company (as those services are listed in [a] January 15, 1995 agreement) render Southern Company Services, Inc., an `employer' under § 25-5-1(4) [Ala.Code 1975] [a part] of the Alabama Workers' Compensation Laws.
"(c) Whether a corporation-owner of a plant, which relinquishes operating control to a sister company that is wholly owned by the same parent corporation as the owner, is a `group' of a plant employee's `employer' within the meaning of the Alabama Workers' Compensation Laws, where the corporation-owner indirectly pays the employee's wages and workers' compensation benefits.
"(d) Does it alter the opinion of the Court if, in addition to the facts in (c), the corporation-owner has tried to limit its liability to payment of workers' compensation benefits?"

SCSI's Status as a Service Company
The Alabama Workers' Compensation Act provides an exclusive remedy for the employee injured in a workplace accident:
"Except as provided in this chapter, no employee of any employer subject to this chapter ... shall have a right to any other method, form, or amount of compensation or damages for an injury or death occasioned by an accident or occupational disease proximately resulting from and while engaged in the actual performance of the duties of his or her employment and from a cause originating in such employment or determination thereof."
Ala.Code 1975, § 25-5-52. Section 25-5-53 similarly provides, in pertinent part:
"Except as provided in this chapter, no employer shall be held civilly liable for personal injury to or death of the employer's employee, for purposes of this chapter, whose injury to or death is due to an accident or to an occupational disease while engaged in the service or business of the employer, the cause of which accident or occupational disease originates in the employment."
Thus, whether a person or entity is an "employer" within the meaning of the Act determines whether the employee can maintain a civil lawsuit against that person or entity. In this context, whether the person or entity the employee wishes to sue is deemed an "employer" is of critical significance.
"Employer" is defined at Ala.Code 1975, § 25-5-1(4), which reads, in pertinent part:
"(4) EMPLOYER. Every person who employs another to perform a service for hire and pays wages directly to the person. The term shall include a service company for a self-insurer or any person, corporation, copartnership, or association, or group thereof, and shall, if the employer is insured, include his or her insurer, the insurer being entitled to the employer's rights, immunities, and remedies under this chapter, as far as applicable."
We are called upon initially to address the question whether a "service company" that does not assist the employer in regard to its workers' compensation benefits plan fits within this definition of "employer." Richardson argues that the term "service company for a self insurer" applies only to those service companies that assist with the administration of the employer's workers' compensation program. We agree.
In determining the legislative intent, the "polestar" of statutory construction, see Sunflower Lumber Co. v. Turner Supply Co., 158 Ala. 191, 48 So. 510 (1909); Ex parte Jordan, 592 So.2d 579, 581 (Ala.1992), we are guided by Ala.Code 1975, § 25-5-53, through which the legislature has expressly stated which nonemployer entities enjoy statutory immunity. That section provides, in pertinent part, that "immunity from civil liability for all causes of action except those based on willful conduct shall ... extend to the workers' compensation insurance carrier of the employer [or] to a ... corporation responsible for the servicing and payment of workers' compensation claims for the employer."
Note that under § 25-5-53 the grant of immunity to a corporate "service *441 company" is expressly tied to the servicing and administering of a workers' compensation program. Reading this section in pari materia with § 25-5-1(4), which defines "employer," we think it clear that the reference in § 25-5-1(4) to "a service company for a self-insurer" was intended to apply to companies that administer the workers' compensation plan of a self-insured employer.
Accordingly, as to the first certified question"[w]hether a service company that does not provide assistance related to workers' compensation benefits qualifies as a `service company for a self-insurer' and thus, is an `employer'" we answer in the negative.
As to the second certified question whether the services provided by SCSI to Southern Nuclear under a January 1995 agreement between them renders SCSI a service company "employer" under § 25-5-1(4)we observe that, given our answer to the first question, we must answer this second question in the negative. That agreement provides for SCSI to act as a service company of Southern Nuclear, but SCSI does not assert that it contracted by that agreement to service or administer Southern Nuclear's workers' compensation program, and it is undisputed that SCSI did not service or administer that program for Southern Nuclear.

APCo's Status as a Sister Company of the Employer
The third certified question is "[w]hether a corporation-owner of a plant, which relinquishes operating control to a sister company ... wholly owned by the same parent corporation ... is a `group' of [an] `employer' ..., where the corporation-owner indirectly pays the employee's wages and workers' compensation benefits."[2] We answer this third question in the negative.
APCo and Southern Nuclear are both subsidiaries under the corporate umbrella of The Southern Company. In December 1991, APCo and Southern Nuclear entered into an agreement providing that Southern Nuclear would operate APCo's Farley Nuclear Plant and that APCo would be entitled to all power generated at the plant. Southern Nuclear charges APCo for its costs in operating the facility. Those costs would include the wages and benefits Southern Nuclear pays its employees.
It bears emphasis, however, that these two companies are wholly separate in their operations and as legal entities. For example, APCo is an Alabama corporation in the business of selling electrical power, while Southern Nuclear is a separate Delaware corporation in the business of operating nuclear power plants.
Simply stated, the conclusion is inescapable that, irrespective of the fact that Southern Nuclear charges APCo for its costs of operation, the relationship of these separate companies cannot reasonably be construed so as to make APCo a "group" of Southern Nuclear. Also, to answer the last certified question, we conclude that our answer to the third question is not altered by the existence of a contract between APCo and Southern Nuclear wherein they essentially agree that APCo will be deemed to be an "employer" for purposes of workers' compensation immunity. In this regard, we are not persuaded by APCo's arguments that we should impose the terms of this agreement on a person not a party to the agreement (and not employed by APCo), so as to render APCo immune from that person's work-related claims. Accordingly, we answer the last question in the negative.
QUESTIONS ANSWERED.
HOOPER, C.J., and MADDOX, ALMON, SHORES, KENNEDY, and BUTTS, JJ., concur.
HOUSTON, J., concurs in part and dissents in part.
COOK, J., dissents.
HOUSTON, Justice (concurring in the answers to questions (a) and (b) and dissenting to the answers to questions (c) and (d)).
I would indulge in the privilege reserved by this Court to restate the issue or issues *442 and to determine the manner in which the answers are to be given (see Citizens & Southern Factors, Inc. v. Small Business Administration, 375 So.2d 251, 253 n. 2 (Ala. 1979)), and I would restate questions (c) and (d) as the following single question:
Whether a corporate owner of a plant that relinquishes operating control to a sister company, which is wholly owned by the same parent corporation as the owner of the plant, is a "group" of the employee's "employer" within the meaning of the Alabama Workers' Compensation Act, where the corporate owner indirectly pays the employee's wages and workers' compensation benefits and where the operating agreement transferring control provides that "[i]t is the intent of [the corporate owner] and [the sister company] that for purposes of workmen's compensation [the corporate owner] not be exposed to greater liability by virtue of this agreement than [it] would have if it had utilized [its] employees to perform operation and maintenance of the plant?"
I would answer this question in the affirmative. I believe the operating agreement is a relevant consideration in determining whether the corporate owner is a part of the "group" of its sister company, which operates the plant pursuant to that operating agreement.
NOTES
[1] SCSI provided Southern Nuclear with services such as engineering, accounting, and data processing.
[2] As noted above, the definition of "employer" at § 25-5-1(4) includes "a service company for a self-insurer or any person, corporation, copartnership, or association, or group thereof." (Emphasis added.)