**Randy RICE and Norma Jean Ferguson, Plaintiffs,**

v.

**UNITED PARCEL SERVICE GENERAL SERVICES CO., a Delaware corporation; Inforite Corp., a New York corporation; Toppan Moore Co., a Japanese corporation; II Morrow, Inc., an Oregon corporation; and Motorola, Inc., a Delaware corporation, Defendants.**

No. Civ. 96–6328–FR.

United States District Court,
D. Oregon.

March 19, 1999.

Arthur C. Johnson, Johnson, Clifton, Larson & Corson, Eugene, OR, William Rutzick, Corrie J. Yackulic, Schroeter, Goldmark & Bender, Seattle, WA, David N. Mark, Seattle, WA, for plaintiffs.

Christopher W. Angius, Stephen M. Feldman, Joy Ellis, Perkins Coie LLP, Portland, OR, Jeffrey C. Spear, Tonkon, Torp, Galen, Marmaduke & Booth, P.C., Portland, OR, Anne E. Kershaw, Valdespino, Copland & Kershaw, Tarrytown, NY, for defendants United Parcel Service General Services Co. and II Morrow, Inc.

James D. Hibbard, John T. Kaempf, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, OR, for defendants Inforite Corp. and Toppan Moore Co.

John F. Folliard, Jr., Angela M. Stewart, Abbott, Davis, Rothwell, Mullin & Earle, P.C., Portland, OR, for defendant Motorola, Inc.

## OPINION

FRYE, District Judge.

The matters before the court are the motions for summary judgment against plaintiff Norma Jean Ferguson (# 50) and plaintiff Randy Rice (# 55) filed by defendants United Parcel Service General Services Co. and II Morrow, Inc. pursuant to Fed.R.Civ.P. 56, and the joinder in the co-defendants' motions for summary judgment against the plaintiffs filed by defendant Motorola, Inc. (# 64), which will be treated as a motion for summary judgment.

## UNDISPUTED FACTS

On December 19, 1996, plaintiff Randy Rice, a resident of the State of Wisconsin, and plaintiff Norma Jean Ferguson, a resident of the State of Alabama, both of whom are package car drivers employed by United Parcel Service, filed this action. They allege that they suffered repetitive stress injuries from using hand-held computers known as delivery information acquisition devices (DIADs) in the performance of their jobs.

### 1. UPS Corporate Structure

The package delivery business that is commonly called "UPS" is a family of corporations. UPS America, Inc. (UPS America) is the parent corporation of numerous wholly-owned subsidiaries, including defendant United Parcel Service General Services Co. (UPSGSC), a Delaware corporation; defendant II Morrow, Inc. (II Morrow), an Oregon corporation; United Parcel Service, Inc. (UPS, Inc.), an Ohio corporation; and United Parcel Service, Inc., a New York corporation (UPS New York). The plaintiffs are package car drivers employed by UPS, Inc., the entity which is responsible for the ground delivery of packages in the central and western parts of the United States. UPS New York employs package car drivers who service other parts of the country. UPSGSC and UPS, Inc. share the same corporate chairman, secretary, assistant secretary, treasurer, assistant treasurer, and directors, and they share fifteen of the same vice presidents. UPS America files a consolidated federal income tax return for itself and its subsidiaries located in the United States, including II Morrow, UPS, Inc., and UPSGSC.

Effective January 1, 1958, defendant UPSGSC entered into a contract with UPS America, whereby UPSGSC agreed to provide administrative and management services for numerous operating companies, including UPS, Inc. (the Service Agreement). One of the services specified in the Service Agreement for UPSGSC to perform is "[t]o assist each of said operating companies in accident prevention and safety work." UPSGSC also agreed to supervise "the purchase of insurance of every kind and character." The Service Agreement provides that "[y]our company [UPSGSC] will be required to perform the services described above as items (1) to (5) [including the two noted above by the court]." The Service Agreement was modified in 1970 to provide that "the fee shall be equal to five (5%) per cent of your [UPSGSC's] actual disbursements for labor, materials and expenses required or incurred by you [UPSGSC] in the performance of said agreement." UPSGSC also purchases material and equipment, including trucks, uniforms, and hand held equipment, on behalf of the operating companies, including UPS, Inc. These purchases

are transferred to the operating companies at cost through an inter-company clearing account.

As stated above, the Service Agreement requires UPSGSC to purchase insurance of every kind and character for the operating companies, including UPS, Inc. James Felty of UPSGSC testified as follows:

Q. And how about workers' compensation coverage, who's the carrier for that?

A. Liberty Mutual Insurance Company.

Q. And who pays for the premium on that?

A. General Services Company.

Q. And do the operating companies have workers' compensation coverage?

A. Yes, they do.

Q. And who's the carrier for that?

A. Liberty Mutual Insurance Company.

Q. Who pays the premium on that?

A. General Services Company.

Q. [by a different attorney] Does General Services Company have its own workers' compensation policy?

A. General Services is covered I believe under a blanket policy that covers all the companies. I can't speak to that specifically, though.

Q. So you don't know whether or not General Services workers' comp policy for its own employees is different or the same as the policy that the operating companies have for its [sic] own employees?

A. I have no intimate knowledge of independent individual insurance policies. That's not what I do.

Deposition of James Felty, pp. 112–13. The plaintiffs obtained a declaration from Donna Knepper, an employee of the State of Wisconsin. She states that no entity called United Parcel Service General Services Company is identified as an "employer" or is listed as having workers' compensation insurance coverage in the State of Wisconsin. Knepper included several pages of printouts from the information that the State of Wisconsin has concerning entities related to UPS. Most pages of the printouts list UPS of America as the insured; UPS, Inc. is mentioned in only one place.

UPSGSC and UPS, Inc. keep separate books. The general tariff[1] is issued by UPS, Inc. and UPS New York. The National Master United Parcel Service Agreement is a collective bargaining agreement between the International Brotherhood of Teamsters and UPS, Inc. and UPS New York.

The service territory is divided into regions. UPSGSC employs people working at the regional level. Regions are divided into districts. Operating companies, including UPS, Inc., employ people working at the district level. District managers report to regional managers. At the district level, supervisors of UPS, Inc. hire the package car drivers, train them, evaluate them, and manage their daily concerns, such as the assignment of their routes and any grievances that they have.

### 2. The Engineering Projects

In 1984, Clay Lafferty, the head of research and development for UPSGSC, sent a Request for Proposal to several companies asking for proposals regarding prototypes of a hand-held delivery information acquisition device (DIAD). In February of 1986, UPSGSC contracted with defendant Inforite Corp. (Inforite) to design, build and test the prototype DIADs.

Defendant Inforite did not have a technical design engineering group; therefore, the engineering work necessary for the DIAD was to be performed by employees of the parent company of Inforite, defendant Toppan Moore Co. (Toppan Moore). Inforite is located in the United States; Toppan Moore is located in Japan.

Defendant Toppan Moore built 50 prototype DIADs and sent them to UPSGSC in late 1987 and early 1988. UPSGSC's engi-

1. A document describing the services offered by a common carrier.

neers tested the prototypes, rewrote the software, and began field testing the prototypes in the State of New York. Changes were made to the DIADs after the field tests. In November of 1988, UPSGSC ordered the manufacture of an additional 250 prototype DIADs from Toppan Moore; they were delivered by Toppan Moore in April of 1989, and field testing continued.

Defendants UPSGSC and Inforite entered into a contract effective September 28, 1989, whereby Inforite agreed to manufacture and supply DIADs to UPSGSC. Section 15.5 of that contract states that nothing contained in the contract creates a joint venture or a partnership between the contracting companies.

Kato of Inforite prepared the 1984 proposal in response to the request of UPSGSC and also prepared the addendum to the proposal in 1986. UPSGSC insisted that all of the communications between Toppan Moore and UPSGSC be routed through Inforite. Inforite took steps to reinforce the importance of this request with employees of Toppan Moore when these employees began to contact UPSGSC directly.

UPSGSC wrote the final product specifications in August of 1989 and contracted with Inforite to sell the DIADs to UPSGSC, which were manufactured according to the final product specifications written in August of 1989. This group of mass-produced DIADs were called DIAD IAs. The DIAD IAs were manufactured by Toppan Moore, who sold them to Inforite, who sold them to UPSGSC. During the manufacture, the sale, and the shipment of the DIAD IAs, Inforite never possessed them. The DIAD IAs passed directly from Toppan Moore to UPSGSC. Approximately 100,000 DIAD IAs were manufactured. Inforite wrote a service manual in 1990 and performed warranty repairs on the DIAD IAs without the aid of a subcontractor.

In 1990, II Morrow formulated a concept for a smaller and lighter version of the DIAD. It became known as the DIAD II.

II Morrow formulated the concept for the DIAD Vehicle Adapter (DVA) which attaches to the dashboard of a UPS package car. The DVA houses the DIAD when it is not in use and allows the DIAD to transmit delivery information to a central location using a cellular telephone modem. II Morrow designed the DVA I to be used with the DIAD IA. The company developed a working prototype by January of 1992. During 1992, UPSGSC contracted with Motorola, Inc. to finish the design and to manufacture the DIAD II, and the DVA I. II Morrow developed the concept for the DVA II in connection with its preliminary design work on the DIAD II. Motorola, Inc. completed the design and manufactured the DVA II.

In 1993, II Morrow modified the DIAD IA case. At the same time, Toppan Moore produced a new DIAD IA motherboard. When a DIAD IA is upgraded with the modified case and new motherboard, it is called a DIAD IA–1.

UPSGSC and II Morrow did not sell or market the DIAD or the DVA to the general public. They were only involved in the equipment to be used by the package car drivers of UPS, Inc.

The plaintiffs allege that they sustained injuries when they used the DIAD[2] during the course of their employment. They allege two claims for relief: (1) negligence in the design of the DIAD and in failing to instruct users on the proper use of the DIAD and in failing to warn of possible dangers; and (2) strict product liability based on the allegation that the DIAD is unreasonably dangerous and in failing to instruct users on the proper use of the DIAD and in failing to warn of the possible dangers of the DIAD.

2. If the specific model of the DIAD is not relevant, the court will use the term "DIAD" to refer generally to the equipment.

## CONTENTIONS OF THE PARTIES

Defendants UPSGSC and II Morrow contend (1) that the workers' compensation laws of plaintiffs' home states bar their claims against UPSGSC; (2) that plaintiff Rice's negligence claim is barred by the Oregon statute of limitations; (3) that they cannot be held strictly liable to plaintiff Ferguson under the Alabama Extended Manufacturers Liability Doctrine ("AEMLD"); (4) that the AEMLD preempts plaintiff Ferguson's negligence claim; (5) that they did not market or place into the stream of commerce the DIAD or the DVA, and, consequently, they cannot be held strictly liable; (6) that they are not liable under the AEMLD as they are not in the business of selling the DIAD or the DVA; (7) that they are not liable under the AEMLD because plaintiff Ferguson cannot show that her injury was caused by the DIAD or the DVA; and (8) that II Morrow owed no duty to the plaintiffs which would support a negligence claim.

The plaintiffs contend (1) that their claims against UPSGSC are not barred by the workers' compensation laws of their home states because UPSGSC is neither a joint employer with UPS, Inc. nor the employer of the plaintiff; (2) that plaintiff Rice's negligence claim is governed by the Wisconsin statute of limitations; (3) that their pleadings are sufficient for a claim under the AEMLD, or, in the alternative, plaintiff Ferguson seeks leave to amend her complaint; (4) that plaintiff Ferguson's negligence claim is plead as an alternative to her AEMLD claim; (5) that UPSGSC and II Morrow are both sellers of the DIAD and the DVA to other UPS corporate entities, and therefore placed the products into the stream of commerce; (6) that UPSGSC and II Morrow are liable because they knew that Inforite would market the DIAD as its own product, the AS 1050; (7) that plaintiff Ferguson's injuries were proximately caused by the DIAD or the DVA; and (8) that the involvement of II Morrow as the designer and manufacturer of the DIAD IA–1 is sufficient to give rise to a negligence cause of action against II Morrow.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630–631 (9th Cir. 1987).

## ANALYSIS AND RULING

### 1. *Choice of Law*

The parties agree that the product liability laws of the plaintiffs' home states apply to their product liability claims. The parties also agree that the workers' compensation laws of the plaintiffs' home states apply in this action. The court will apply those laws.

The parties do not agree on the choice of law to apply to plaintiff Rice's negligence claim.

■ When the laws of more than one jurisdiction arguably apply to an issue, a federal court exercising diversity jurisdiction must apply the choice of law rules of the state in which it is located. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

■ Under Oregon law, the court must determine whether there is an actual conflict of law on the disputed issue; if not, Oregon law applies. *Cropp v. Interstate*

*Distrib. Co.*, 129 Or.App. 510, 515–16, 880 P.2d 464 (dissenting opinion), *rev. denied,* 320 Or. 407, 887 P.2d 791 (1994). Next, the court must determine whether both states have substantial interests in having their laws applied. If not, there is no choice of law issue, and the court applies the law of the one state with substantial interests. *Dabbs v. Silver Eagle Mfg. Co.*, 98 Or.App. 581, 583–84, 779 P.2d 1104, *rev. denied,* 308 Or. 608, 784 P.2d 1101 (1989). If both states have substantial interests, the Oregon Supreme Court has adopted the "most significant relationship" approach of the Restatement (Second) Conflicts of Law. *Erwin v. Thomas,* 264 Or. 454, 456, 506 P.2d 494 (1973).

### 2. Oregon Versus Wisconsin Statute of Limitations for Negligence

■ The parties agreed that there was no conflict in the negligence laws to be applied in a companion case, thus the negligence laws of the State of Oregon were applied. *See Sy v. United Parcel Service General Services Co.,* Civil No. 94–1464–FR (Opinion, March 17, 1998), 1998 WL 126870, *7 (D.Or.). The *Sy* plaintiffs were from the States of Illinois and Wisconsin. In this case, defendants UPSGSC and II Morrow contend that the laws of the State of Oregon should apply to the negligence claim of plaintiff Rice because there is no conflict between the negligence laws of the States of Oregon and Wisconsin, while plaintiff Rice contends that Wisconsin law is the appropriate choice of law because there are conflicts between the Oregon and Wisconsin negligence statutes: (1) Wisconsin recognizes a continuing duty to warn; and (2) Wisconsin allows three years to file a suit, while Oregon has a two-year statute of limitation.

Plaintiff Rice filed his claims on December 19, 1996. If Oregon law applies, plaintiff Rice's negligence claim must have been commenced within two years after the accrual of his claim. ORS 30.905(2). If Wisconsin law applies, the statute of limitations is three years. WSN 893.54. Plaintiff Rice contends that because there is a continuing duty to warn under the

common law of the State of Wisconsin, *Gracyalny v. Westinghouse Elec. Corp.,* 723 F.2d 1311, 1318 (7th Cir.1983), citing *Kozlowski v. John E. Smith's Sons Co.,* 87 Wis.2d 882, 901, 275 N.W.2d 915, 923 (1979), and the parties have not cited an Oregon case which applies the same law, there is a conflict of law. The court agrees and concludes that there is a conflict of law.

With that determination, the court must now decide whether both states have substantial interests in having their laws applied. If not, there is no choice of law issues, and the court applies the law of the one state with substantial interests. *Dabbs v. Silver Eagle Mfg. Co.,* 98 Or.App. 581, 583–84, 779 P.2d 1104, *rev. denied* 308 Or. 608, 784 P.2d 1101 (1989). If both states have substantial interests, the Oregon Supreme Court has adopted the "most significant relationship" approach of the Restatement (Second) Conflicts of Law. *Erwin v. Thomas,* 264 Or. 454, 456, 506 P.2d 494 (1973).

The court concludes that the State of Oregon has neither a substantial interest in having its negligence laws applied in this case, nor does it have the most significant relationship to the occurrence and the parties. There are no Oregon drivers before this court; none of the plaintiffs are residents of the State of Oregon; and there is no allegation that the plaintiffs were injured while working in the State of Oregon. Some of the defendants do not conduct business in the State of Oregon. The DIADs were not designed or manufactured in the State of Oregon. Therefore, the three-year statute of limitations of the State of Wisconsin will be applied to the negligence claim of plaintiff Rice. The defendants' motion for summary judgment on this issue is denied.

### 3. Workers' Compensation Statutes

#### A. UPSGSC as the Employer under the Laws of the State of Alabama

■ UPSGSC contends that the workers' compensation statute of the State of

Alabama, the home state of plaintiff Ferguson, bars its liability because UPSGSC is an employer with UPS, Inc. The plaintiffs contend that because they did not consent to employment with UPSGSC, there is no employment relationship under the workers' compensation laws of the State of Alabama.

Under the laws of the State of Alabama, the workers' compensation laws limit an employee's recovery against his or her employer to the remedies set out in the act. Ala.Code § 25–5–52 and § 25–5–53. An "employer" is defined as:

> [e]very person who employs another to perform a service for hire and pays wages directly to the person. The term shall include a service company for a self-insurer or any person, corporation, copartnership, or association, or group thereof, and shall, if the employer is insured, include his or her insurer, the insurer being entitled to the employer's rights, immunities, and remedies under this chapter, as far as applicable.

Ala.Code § 25–5–1(4). The UPS defendants contend that UPSGSC qualifies as both an employer and part of the "group" of UPS, Inc. UPS, Inc. is a family of corporations. UPSGSC and UPS, Inc. share the same corporate chairman, secretary, assistant secretary, treasurer, assistant treasurer, and directors, and they share fifteen of the same vice presidents. UPS America files a consolidated federal income tax return for itself and its subsidiaries located in the United States, including II Morrow, Inc., UPS, Inc., and UPSGSC. This close relationship may indicate a "group," but there has been no case law provided that clearly defines "group" as a shield from liability for workers' compensation in the State of Alabama.

In *Richardson v. PSB Armor, Inc.*, 682 So.2d 438 (Ala.1996), the Supreme Court of Alabama found that two companies were *not* a "group" because the two companies were "wholly separate in their operations and as legal entities." *Id.* at 441. The factors considered in determining the relationship of those two corporations are similar to the two corporations before this court. In *Richardson*, both companies were under the same corporate umbrella, as are UPSGSC and UPS, Inc. In *Richardson*, both companies were separate legal entities, as are UPSGSC and UPS, Inc. In *Richardson*, although both companies generated energy, one electrical and one nuclear, the Alabama Supreme Court did not find that they shared a common mission, which also defeated the "group" argument. UPSGSC's mission is to provide management services, while the mission of UPS, Inc. is to deliver packages. UPSGSC and UPS, Inc. also keep separate books, which does not support a finding that they are a "group." In *Richardson*, there was an agreement between the companies that one company would operate the other's nuclear power plant and be entitled to all power generated at the plant, and the first company would charge its costs in operating the facility to the second company, including wages and benefits to its employees. The Service Agreement in this case requires UPSGSC to purchase insurance of every kind and character for the operating companies, including UPS, Inc. UPSGSC also purchases material and equipment, including trucks, uniforms, and hand held equipment, on behalf of the operating companies, including UPS, Inc. These purchases are transferred to the operating companies at cost through an inter-company clearing account. The relationship that UPSGSC shares with UPS, Inc. does not include charging the wages and benefits of its employees to UPS, Inc.

The court concludes that there is a factual issue as to whether UPSGSC is a "group" or an employer as defined by the workers' compensation laws of the State of Alabama and therefore entitled to the exclusivity provision of those laws. The motion of UPSGSC for summary judgment based on this argument is denied.

### B. Service Company

UPSGSC contends that the workers' compensation statute of the State of Ala-

bama protects it from liability for plaintiff Rice's alleged injuries because it is a service company covered by Alabama's workers' compensation statute.

██ The Alabama workers' compensation statute provides that "immunity from civil liability for all causes of action except those based on willful conduct shall also extend to … a person, firm, association, trust, fund, or corporation responsible for servicing and payment of workers' compensation claims for the employer." Ala.Code § 25–5–53. When § 25–5–53 is read in conjunction with the definition of employer in § 25–5–1(4), the term "service companies" applies "only to those service companies that assist with the administration of the employer's workers' compensation program." *Richardson v. PSB Armor, Inc.*, 682 So.2d 438, 440 (Ala.1996). It is also "clear that the reference in § 25–5–1(4) to 'a service company for a self-insurer' was intended to apply to companies that administer the workers' compensation plan of a self-insured employer." *Id.* at 441. Although UPSGSC is bound by the Service Agreement to purchase all insurance for UPS, Inc., and James Felty testified that UPSGSC paid the workers' compensation premiums for UPS, Inc., the carrier for workers' compensation coverage was Liberty Mutual Insurance Company. *See* Felty Deposition, 112–13 (attached as Exhibit 8 to Statement).

Because the term "service companies" as used in the Alabama workers' compensation statute does not apply to UPSGSC in this case, summary judgment for UPSGSC based on this argument is denied.

### C. *Joint Employer Doctrine*

██ UPSGSC contends that the workers' compensation statutes of the States of Wisconsin and Alabama bar its liability because UPSGSC is a joint employer with UPS, Inc. A person may be jointly employed by more than one employer. In those cases, both employers receive the benefit of workers' compensation immunity for employers.

Under the Service Agreement at issue here, UPSGSC contracted with UPS America to provide administrative and management services for UPS, Inc., the employer of the plaintiffs. The administrative and management services that UPSGSC contracted to provide for UPS, Inc. include centralized administrative functions, such as purchasing insurance, accident prevention, purchasing vehicles and other supplies, researching other equipment or techniques to improve efficiency and control costs, and to investigate problems reported by the operating companies. The services do not include line management of employees, particularly the package car drivers. Although UPSGSC contends that it has the right to control the activities of the package car drivers through its regional managers, there is no evidence that this right has ever been exercised. Supervisors employed by UPS, Inc. direct the daily activities of the package car drivers. The undisputed evidence is that UPSGSC does not control the manner in which the work of the package car drivers is performed. Based on the Service Agreement, the plaintiffs have raised an issue of material fact as to whether UPSGSC has the right to control the package car drivers or the right to discharge them.

Continuing to the other factors, UPSGSC does not pay the plaintiffs. UPSGSC coordinates the purchase of the equipment used by the plaintiffs, including the DIADs involved in this case. UPSGSC does not retain ownership of the equipment used by the plaintiffs. It transfers ownership of the equipment used by the plaintiffs to UPS, Inc. Thus, UPSGSC acts more as a vendor than as a company which is loaning, or furnishing, the equipment to UPS, Inc.

██ Under the laws of the State of Wisconsin, the Workers' Compensation Act limits an employee's recovery against his or her employer exclusively to the remedies in the act. WSA § 102.03(2). The State of Wisconsin has also recognized im-

munity for joint employers. *Insurance Co. of N. Am. v. Department of Indus., Labor and Human Relations,* 45 Wis.2d 361, 173 N.W.2d 192, 196 (1970). The right to control is the primary test. *Id.; Kress Packing Co., Inc. v. Kottwitz,* 61 Wis.2d 175, 212 N.W.2d 97, 100–01 (1973). Under the laws of the State of Alabama, immunity for joint employers is also recognized, but "the finder of fact should concentrate, not solely on control, but also on additional indicia of the employment relationship in determining an employee's status." *Stewart v. Carter Realty Co.,* 518 So.2d 118, 121 (Ala.1987). The court concludes that there is a factual issue as to whether UPSGSC is a joint employer of the plaintiffs. The motion of UPSGSC for summary judgment based on this argument is denied.

### 4. *Strict Liability and the AEMLD*

 UPSGSC and II Morrow contend that the Alabama Extended Manufacturer's Liability Doctrine (AEMLD) does not recognize the doctrine of strict liability, as plaintiff Ferguson has plead in her complaint. Plaintiff Ferguson contends that the AEMLD has been plead in her complaint, but in the alternative seeks leave to amend her complaint to include a claim under the AEMLD.

Plaintiff Ferguson's claim for strict product liability is alleged as follows:

> 5.2 The DIAD was unreasonably dangerous as a result of its design and/or as a result of inadequate instruction and/or inadequate warnings as to DIADS use, including post-manufacturing warnings.
>
> 5.3 Defendants are strictly liable to plaintiffs for these designs, failure to instruct and/or ongoing failure to warn [of] defects which proximately caused injury to plaintiff drivers.

Complaint for Personal Injury, p. 5 (attached as Exhibit 1 to Defendants' Concise Statement of Facts).

. While the AEMLD has much in common with the doctrine of strict liability in tort found in § 402A of the Restate-

ment (Second) of Torts (1965), it is more accurately described as a hybrid of strict liability and traditional negligence concepts. On the one hand, the AEMLD is akin to strict liability because selling an unreasonably dangerous product—that is, a defective product—is deemed to be negligent as a matter of law: "[l]iability ... attaches solely because the defendant has exposed expected users of a product not reasonably safe to unreasonable risks." On the other hand, in contrast to the purely "no-fault" version of strict liability found in the Restatement, the AEMLD retains various affirmative defenses, including contributory negligence, assumption of the risk, and, under certain circumstances, the lack of a causal relation.

*Pitts v. Dow Chem. Co.,* 859 F.Supp. 543, 550 (M.D.Ala.1994) (citations and footnote omitted). Although the AEMLD and the doctrine of strict liability are similar, plaintiff Ferguson's use of the phrase "strictly liable" within her complaint does not state a claim for which relief can be granted under the laws of the State of Alabama; therefore, the court will look to plaintiff Ferguson's request for leave to amend her complaint.

After the period for amendment of a complaint has passed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Plaintiff Ferguson is hereby granted leave to amend her complaint to include a products liability claim under the AEMLD.

UPSGSC and II Morrow also contend that should leave to amend be allowed by this court, plaintiff Ferguson's negligence claim must be dismissed as the AEMLD preempts her negligence claim.

 A product liability action in the State of Alabama may be based upon "(a) negligence, (b) innocent or negligent misrepresentation, (c) the manufacturer's liability doctrine, (d) the Alabama extended manufacturer's liability doctrine, as it ex-

ists or is hereafter construed or modified, (e) breach of any implied warranty, *or* (f) breach of any oral express warranty and no other." Ala.Code § 6–5–501(2) (emphasis added). Because plaintiff Ferguson contends that since her negligence claim is plead in the alternative, it should not be dismissed on a motion for summary judgment.

### 5. *Strict Product Liability and Stream of Commerce*

UPSGSC and II Morrow contend that strict product liability laws and the AEMLD do not apply to them because they have never put DIADs or DVAs into the stream of commerce, and, thus, they are not sellers under the law.

The State of Wisconsin has adopted the Restatement (Second) of Torts § 402A (1965), which states "(1) One who sells any product in a defective condition unreasonably dangerous to the user ... is subject to liability ... if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold." *Dippel v. Sciano*, 37 Wis.2d 443, 459, 155 N.W.2d 55, 63 (1967). All people in the distributive chain are strictly liable for injuries from a defective product if they are "responsible for creating the defect and in a position to implement procedures to prevent the occurrence of similar defects in the future." *Kemp v. Miller*, 154 Wis.2d 538, 556, 453 N.W.2d 872, 879 (Wis.1990).

The AEMLD of Alabama applies to manufacturers, suppliers or sellers who place a defective product into the "stream of commerce." *First Nat'l Bank of Mobile v. Cessna Aircraft Co.*, 365 So.2d 966, 967–68 (Ala.1978). "The fact that a technical sale has not taken place should not relieve a manufacturer who has placed defective merchandise on the market." *Id.* at 967.

UPSGSC and UPS, Inc. are separate corporate entities. UPS is in the business of delivering packages. It is not in the business of selling DIADs. UPS, Inc. employs the package car drivers and is in the business of delivering packages. UPSGSC is in the business of providing administrative functions and equipment such as the DIADs to UPS, Inc. II Morrow has the single administrative function of providing such equipment to UPSGSC. Although UPSGSC is not organized as a profit center, the DIADs are transferred from UPSGSC to UPS, Inc. On the basis of these facts, the court finds that there is a factual issue as to whether UPSGSC and II Morrow put the DIADs into the stream of commerce and as to whether they may be held liable under the product liability laws of the States of Wisconsin and Alabama. The defendants' motions for summary judgment on this basis are denied.

### 6. *AEMLD and the Business of Selling*

UPSGSC and II Morrow contend that they were not in the business of selling DIADs or DVAs and, thus, are not liable under the AEMLD.

The Alabama Code states that an action for product liability may be brought for damage or injury "caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, or labeling of a manufactured product...." Ala.Code § 6–5–501(2). A sale may be the most common situation in which application of the AEMLD is proper, but it is not as limited as the defendants contend. "The fact that a technical sale has not taken place should not relieve a manufacturer who has placed defective merchandise on the market." *First Nat'l Bank of Mobile v. Cessna Aircraft Co.*, 365 So.2d 966, 967 (Ala.1978).

The facts of this case, as discussed in Section 5 above, are sufficient for this court to find that there is a factual issue as to whether UPSGSC and II Morrow may be held liable under the product liability laws of the State of Alabama. Summary judgment on this issue is denied.

## 7. *Proximate Cause*

 The defendants contend that plaintiff Ferguson's alleged injuries were not proximately caused by her use of the DIAD or the DVA. The defendants contend that plaintiff Ferguson had experienced discomfort with her upper extremities prior to using the DIAD or the DVA. Plaintiff Ferguson contends that there can be more than one proximate cause of an injury.

 "[T]he defendant's negligence need not be the sole cause of an injury in order for an action against the defendant to lie. It is sufficient that the negligence concurred with other causes to produce the injury." *Buchanan v. Merger Enters., Inc.*, 463 So.2d 121, 126 (Ala.1984). Plaintiff Ferguson admits that she had problems with her hands prior to the time she used a DIAD; however, it was January 24, 1996 when her wrist gave way while she was attempting to pull a DIAD out of its DVA. Declaration of Norma Jean Ferguson, p. 3. Plaintiff Ferguson also states that the problems with her hands changed over time. *Id.*

The court concludes that there is a factual issue as to whether or not the DIAD or the DVA, or both, were a proximate cause of injury to plaintiff Ferguson. The motion of the defendants for summary judgment based on this argument is denied.

## 8. *Negligence*

 Defendant II Morrow contends that it cannot be found negligent because it provided limited consulting and assembly services concerning the DIADs and the DVAs and, thus, does not owe any duty to the plaintiffs. The plaintiffs contend that II Morrow designed and manufactured the DIAD IA–1 and consequently has been sufficiently involved to owe a duty to the plaintiffs.

The record before the court shows that II Morrow was involved to some extent with the design and manufacture of some models of the DIAD. The court cannot determine on the record before it whether II Morrow's involvement was great enough to give rise to a duty owed to the plaintiffs. Accordingly, defendant II Morrow's motion for summary judgment against the negligence claim alleged against it is denied.

## CONCLUSION

The motion for summary judgment against plaintiff Norma Jean Ferguson filed by defendants UPSGSC and II Morrow pursuant to Fed.R.Civ.P. 56(# 50) is denied, with leave granted to plaintiff Ferguson to amend her complaint to include a claim under the AEMLD.

The motion for summary judgment against plaintiff Randy Rice filed by defendants UPSGSC and II Morrow pursuant to Fed.R.Civ.P. 56(# 55) is denied.

Defendant Motorola, Inc. is bound by these rulings through its joinder in co-defendants' motions for summary judgment against the plaintiffs (# 64).

The pretrial order in this case shall be lodged on or before April 26, 1999.

